UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Philip Simard,
        Claimant

v.                                          Case No. 15-cv-413-SM
                                            Opinion No. 2016 DNH 186
Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
        Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Philip Simard, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 423, 1381-1383c (the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.   <u>Procedural History</u>.

In January of 2013, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since June of 2012.  Claimant was 46 years old at the time of his alleged onset of disability.  His applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In January of 2015, claimant, his attorney, an impartial vocational expert, and an impartial medical consultant appeared before an ALJ, who considered claimant's applications de novo. Approximately 10 weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review by the Appeals Council, which denied his request for review.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse" the decision of the Acting Commissioner (document no. 12).  In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 13).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 15), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "<u>Substantial Evidence" and Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places the initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his

4

former type of work.  See Gray v. Heckler, 760 F.2d 369, 371

(1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11

(D. Mass. 1982).  If the claimant demonstrates an inability to

perform his previous work, the burden shifts to the Commissioner

to show that there are other jobs in the national economy that

he can perform, in light of his age, education, and prior work

experience.  See Vazquez v. Secretary of Health & Human

Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§

404.1512(f) and 416.912(f).


In assessing a disability claim, the Commissioner considers

both objective and subjective factors, including: (1) objective

medical facts; (2) the claimant's subjective claims of pain and

disability, as supported by the claimant's testimony and/or that

of other witnesses; and (3) the claimant's educational

background, age, and work experience.  See, e.g., Avery v.

Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir.

1986); Goodermote v. Secretary of Health & Human Services, 690

F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled

only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work

exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory
five-step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540
U.S. 20, 24 (2003).  Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
since his alleged onset of disability: June 13, 2012.  Admin.
Rec. at 105.  Next, he concluded that claimant suffers from the
following severe impairment: "degenerative disc disease of the
cervical spine, carpal tunnel syndrome, depression, a 'likely'
posttraumatic stress disorder, and polysubstance abuse."  Id. at
106.  The ALJ also concluded that claimant's mental impairments,
including his substance use disorder, meet listings 12.04 and
12.09 of the impairments listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  Id. at 107.  The ALJ went on, however, to find
that if claimant discontinued his alcohol and substance abuse,
he would not have an impairment or combination of impairments
that meet or medically equal any of the listed impairments.  Id.
at 111.

Next, the ALJ concluded that if claimant discontinued his
substance abuse, he would have the residual functional capacity
("RFC") to perform the exertional demands of a range of light
work.  Id. at 113.  He noted, however, that claimant could have
only brief and routine contact with co-workers, supervisors, and
the general public.  The ALJ also concluded that, "[d]espite his
depression, [claimant] would retain the ability to handle simple
and fairly complex matters [and] he could concentrate and
persist on tasks for two-hour periods over a typical workday and
workweek."  Id.  In light of those restrictions, the ALJ
concluded that claimant was not capable of performing any past
relevant work.  Id. at 122.  See also id. at 165-66 (vocational
expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered
whether there were any jobs in the national economy that
claimant might perform.  Relying upon the testimony of the
vocational expert, the ALJ concluded that if claimant

discontinued his substance abuse, "there would be a significant number of jobs in the national economy that the claimant could perform." Id. at 122-23.  Consequently, the ALJ determined that claimant's "substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." Id. at 123.  That, in turn, led the ALJ to conclude that claimant has not been disabled, as that term is used in the Act, at any time from his alleged onset date through the date of the ALJ's decision.  Id.

## Discussion

Claimant challenges the ALJ's decision on three grounds, asserting that he erred by: (1) improperly striking some of claimant's late-filed exhibits from the record; (2) erroneously concluding that if claimant discontinued his substance abuse, his mental impairments would not meet or equal a listed impairment; and (3) erroneously concluding that if claimant discontinued his substance abuse, he would retain the RFC to perform a range of light work.

I.   Stricken Exhibits.

Claimant's hearing before the ALJ took place on January 5, 2015.  On January 2, 2015, fewer than five days prior to his

hearing, claimant submitted two additional documents in support of his applications for benefits (one of which is now at issue). He submitted three more documents on January 16th (11 days after his hearing).  The ALJ struck those exhibits from the record, concluding that claimant failed to comply with the so-called "Five Day Rule" set forth in 20 C.F.R. § 405.331(a) ("You must submit any written evidence no later than 5 business days before the date of the scheduled hearing.").  Specifically, the ALJ concluded that claimant failed to provide a "good-cause explanation regarding the untimely submission."  Admin. Rec. at 101.  The ALJ did, however, go on to review those documents, but concluded that all were, at best, of "minimum probative value." Id.

Pursuant to the "Five Day Rule," if a claimant wishes to submit evidence fewer than five days before his hearing, the ALJ may decline to consider such evidence unless the claimant satisfies at least one of three criteria.  And, if a claimant wishes to submitted evidence after the hearing, in addition to satisfying one of those three criteria, he must also "show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of [his] claim."  20 C.F.R. § 405.331(c).  Here, claimant asserts that he satisfied one of the specified criteria

by demonstrating that there was some "other unusual, unexpected, or unavoidable circumstance beyond [his] control [that] prevented [him] from submitting the evidence earlier."  20 C.F.R. § 405.331(b).  And, as for the materials submitted after the hearing, he says he has shown that there is a reasonable probability that those documents would affect the outcome of his claim.  The court disagrees.

Claimant first challenges the ALJ's refusal to admit Exhibit 32F, Dr. Whitesell's responses to a Drug and Alcohol Abuse Questionnaire and a Mental Impairment Questionnaire.  At the hearing, counsel for claimant explained that she had only received those document on the Friday before the hearing (which was held on a Monday).  There was, however, no discussion about whether those documents could have been obtained earlier and what efforts counsel undertook (or could have undertaken) to obtain them in a timely way.  Consequently, claimant failed to sustain his burden to demonstrate that there was some "unusual, unexpected, or unavoidable circumstance" beyond his control that prevented timely submission of those documents.  See, e.g., Raymond v. Astrue, No. 1:12-CV-92-DBH, 2012 WL 6913437, at *2 (D. Me. Dec. 31, 2012) ("[Claimant] offers nothing beyond his lack of memory as the necessary "unusual, unexpected, or unavoidable circumstances beyond [his] control."  That is not

enough to meet this rather rigorous standard.  The rule itself
says that the administrative law judge may decline to consider
such evidence, 20 C.F.R. § 405.331(a), and the plaintiff has
shown no abuse of that discretion here."), aff'd, No. 1:12-CV-
92-DBH, 2013 WL 214569 (D. Me. Jan. 18, 2013).

     Of course, the ALJ was present when counsel was discussing
the late-filed exhibits and certainly could have - and probably
should have - developed the record on this matter.  See
generally Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir.
1991).  The ALJ could have inquired into the reason(s) behind
the delay in filing those documents and fleshed out whether
claimant could, or could not, meet his burden under 20 C.F.R. §
405.331(b).  Nevertheless, even if the ALJ had erred by failing
to develop the record, and even if he did ultimately err by
excluding the documents at issue, that error was harmless.  See,
e.g., Lemire v. Colvin, No. CV 15-331L, 2016 WL 3166836, at *10
(D.R.I. May 4, 2016) (holding that, "Even assuming that the ALJ
erred by not accepting the late-tendered records, a review of
the records reveals that any such error is plainly harmless"),
report and recommendation adopted, No. CV 15-331L, 2016 WL
3167077 (D.R.I. June 6, 2016); Wilner v. Astrue, No. 2:11-CV-21-
GZS, 2012 WL 253512, at *2 (D. Me. Jan. 26, 2012) ("I conclude
that the new evidence to which the plaintiff points was

cumulative and that the new evidence, as a whole, did not consistently support her claim.  Its exclusion, thus, was harmless."), aff'd, No. 2:11-CV-21-GZS, 2012 WL 484049 (D. Me. Feb. 14, 2012).

Despite having excluded Dr. Whitesell's responses to the questionnaires from the record, the ALJ plainly read them.  And, indeed, he gave a lengthy explanation in his written decision as to why he determined that those opinions were entitled to no weight.  See Admin. Rec. at 102.  Among other things, the ALJ noted that Dr. Whitesell opined that claimant's "alcohol abuse, opiate abuse, cocaine abuse [are] all in remission."  Exhibit 3 to Claimant's Memorandum (document no. 12-5) at 1.  Yet, claimant had only recently been discharged from an inpatient hospitalization related to his alcohol abuse.  And, less than a month prior to Dr. Whitesell's opinion, claimant reported to Southern New Hampshire Medical Center with a blood alcohol level of 244, stated that he had been evicted from his residence for heroin use, and admitted that he had used heroin only two days prior.  Admin. Rec. at 989.  Based upon the record evidence, including that referenced above, the ALJ was entitled to dismiss Dr. Whitesell's opinion that claimant was "in remission" with respect to his alcohol and substance abuse.

Having carefully reviewed the record, as well as the parties' arguments, the court cannot conclude that the ALJ's stated reasons for affording no weight to Dr. Whitesell's opinions were supported by less than substantial evidence. Consequently, for the reasons stated, as well as those set forth in the Acting Commissioner's memorandum (document no. 13-1) at 5-7, the ALJ did not err in excluding those records. But, even if it was error, any such error was harmless - had those records been admitted, the ALJ adequately explained why he would have afforded them no weight (and, therefore, why they would have had no impact on his disability determination).

The materials claimant submitted to the ALJ after the hearing were accompanied by a cover letter that provided little explanation for why some "unusual, unexpected, or unavoidable circumstance beyond [claimant's] control" prevented their timely submission. 20 C.F.R. § 405.331(c)(3). Nor did that letter include any statement attempting to demonstrate that there was a "reasonable possibility" that the included material would affect the outcome of claimant's applications for benefits. See id. at § 405.331(c). Given those undisputed facts, the court cannot conclude that the ALJ erred (or abused his discretion) when he determined that claimant failed to carry his modest burden of demonstrating entitlement to submit the challenged materials in

an untimely manner.  See generally Lemire v. Colvin, No. CV 15-
331L, 2016 WL 3166836, at *10 (D.R.I. May 4, 2016) (holding that
the claimant failed to meet the burden imposed by § 405.331,
which it noted was similar to the "excusable neglect" standard);
Dax v. Colvin, No. 1:15-CV-21-JHR, 2015 WL 9473405, at *2 (D.
Me. Dec. 28, 2015) (holding that absent a showing that the
materials in question might result in a different outcome on the
merits of claimant's applications, the ALJ did not err in
excluding late-submitted evidence); Freeman v. Colvin, No. 2:14-
CV-412-JHR, 2015 WL 4041733, at *3 (D. Me. July 1, 2015) ("The
only justification supplied to the administrative law judge, in
either the cover letter transmitting the materials or at the
hearing, was that the plaintiff had 'some difficulty' getting
the records and had submitted them immediately when they did
finally arrive.  This showing was patently insufficient to
satisfy the rather rigorous standard of section 405.331(b)(3).")
(citation omitted).

Parenthetically, the court notes that the district courts
in this circuit seem to disagree as to the precise nature of the
burden imposed upon claimants by section 405.331.  As noted
above, those in Maine have described the claimant's burden as
"rather rigorous," while those in Rhode Island have held it is
less demanding and analogized it to "excusable neglect."

Compare <u>Raymond v. Astrue</u>, No. 1:12-CV-92-DBH, 2012 WL 6913437, at *2 (D. Me. Dec. 31, 2012) <u>with</u> <u>Howe v. Colvin</u>, 147 F. Supp. 3d 5, 8 (D.R.I. 2015).  This court need not weigh in on that issue since, even giving claimant the benefit of the lighter burden, it is plain he failed to meet it.

II.  <u>Claimant's Mental Impairments</u>.

When claimant's alcohol and substance abuse are taken into consideration, the ALJ concluded that his mental impairments are of listing severity and, therefore, he would be considered disabled.  But, as the Acting Commissioner notes, the central question in this case is whether, <u>absent</u> claimant's alcohol and substance abuse, his impairments would render him disabled.  In other words, the ALJ had to determine whether claimant's substance abuse was a contributing factor material to his disability.  The pertinent regulations provide, in part, that:

> If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> * * *
>
> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

20 C.F.R. § 404.1535.  See also 20 C.F.R. § 416.935.  See generally 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.").

At step three of the sequential analysis, the ALJ began by finding that claimant's mental impairments meet the requirements for both section 12.04 (Affective Disorders) and section 12.09 (Substance Addiction Disorders) of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Admin. Rec. at 107-10. Specifically, he concluded that "when actively abusing substances, the claimant would meet listing level criteria." Id. at 110.  See generally SSR 13-2p, Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism, 2013 WL 621536 (S.S.A. Feb. 20, 2013).  But, relying largely upon the testimony of Dr. Herbert Golub, a clinical psychologist who testified at claimant's hearing, see id. at 130-51, the ALJ then found that claimant's substance abuse is a contributing factor material to the determination of disability.  Id. at 110.  See generally 42 U.S.C. § 423(d)(2)(C).  The ALJ went on to conclude that if claimant stopped abusing alcohol and illegal drugs, he would not have an impairment or combination of impairments that

meet or equal any of the listed impairments.  Id. at 111.
Claimant challenges those findings, saying the ALJ failed to
properly consider his anxiety disorder and personality disorder
in reaching the conclusion that claimant would not be disabled
absent his alcohol and substance abuse.

But, the record of claimant's hearing is clear: Dr. Golub
testified that he specifically considered whether claimant's
impairments met any one or more of the listings set forth in
sections 12.04 (affective disorder), 12.06 (anxiety disorder),
12.08 (personality disorder), and 12.09 (substance addition
disorder).  Admin. Rec. at 137.  After reviewing claimant's
medical record, Dr. Golub concluded that, absent claimant's
alcohol and substance abuse, his impairments would not be
sufficiently severe to meet any of those listed impairments
(other than the substance addition disorder).  Id. ("I did not
see him meeting any of these listings other than 12.09 without
alcohol or other drugs being material.  The severity did not
seem to be there without these [substances] and he was using so
much . . . 10 to 20 beers a day is quite substantial, plus the
other stuff he was using.").  The ALJ credited Dr. Golub's
testimony – including that concerning claimant's personality
disorder and anxiety disorder – gave it "significant weight,"

and more than adequately explained his reasons for doing so.
Id. at 110.

Moreover, the ALJ specifically discussed - in substantial
detail - his findings that, when claimant's drug and alcohol use
is considered, his mental impairments meet listings 12.04 and
12.09.  Id. at 107-10.  He also discussed why he concluded that,
absent alcohol and substance abuse, claimant would not meet
those listings.  But, says claimant, that was not sufficient.
According to claimant, because Dr. Golub considered whether
claimant also met listings 12.06 and 12.08, the ALJ should have
included a discussion of those listings as well.  It is,
however, well established that an ALJ need not specifically
address every piece of evidence in the record, nor need he
consider every one of the listings set forth in Appendix 1.
See, e.g., Mohr v. Colvin, 14-CV-245-JD, 2015 WL 1499454, at *4
(D.N.H. Apr. 1, 2015) ("Although an ALJ must consider all of the
evidence in the record, an ALJ is not required to discuss every
piece of evidence as long as the ALJ's finding is supported by
substantial evidence.  More specifically, an ALJ is not required
to discuss every finding in a medical opinion as long as the
opinion was considered as part of the administrative record and
weighed as required by § 404.1527(c).") (citations omitted).

Even if the ALJ did err in failing to specifically discuss whether claimant might meet the listings set forth in sections 12.06 and 12.08, such error was plainly harmless.  The ALJ gave a detailed discussion of the degree of claimant's restriction in his activities of daily living, his social functioning, his concentration, persistence and pace, and his episodes of decompensation.  Admin. Rec. at 107-10.  And, the degree of impairment required by the omitted listings (12.06 and 12.08) is the same as required by the listing the ALJ specifically considered: 12.04.  So, when the ALJ supportably concluded that, when claimant's drug and alcohol abuse is <u>not</u> factored in, he no longer meets the listing requirements, that conclusion holds true for <u>all</u> of the listings at issue.  <u>See</u> <u>id.</u> at 112-13.

Claimant's next argument is less clear.  He first notes that the ALJ concluded that if claimant discontinued his substance abuse, he would not suffer from an impairment (or combination of impairments) that meets or equals one of the listed impairments.  But, claimant then asserts that, "According to the hearing transcript, however, Dr. Golub testified that [claimant] met listing 12.09 <u>without</u> alcohol or drugs being material."  Claimant's Memorandum (document no. 21-1) at 12. That, says claimant, is a material discrepancy between the ALJ's conclusions and Dr. Golub's testimony – a discrepancy the ALJ

19

should have addressed in his written decision.  Again, the court
is constrained to disagree.

    At the hearing, Dr. Golub testified that, "I did not see
him meeting any of these listings other than 12.09 without
alcohol or other drugs being material."  Admin. Rec. at 137.
That testimony is not inconsistent with the ALJ's ultimate
findings.  Rather, it seems to be a somewhat awkwardly phrased
statement about the very nature of the impairment discussed in
section 12.09: "Substance Addition Disorders."  Plainly,
claimant's substance abuse was a material factor - indeed it was
the material factor - prompting Dr. Golub's conclusion that
claimant met listing 12.09.  In other words, absent claimant's
drug and alcohol abuse, he would not meet that listed
impairment.  There was no error in the ALJ's findings on this
matter.[1]

    As noted above, the central question in this case is
whether, absent his substance and alcohol abuse, claimant would

---

[1]    It probably bears noting that the listing for substance
addition disorders in section 12.09 is "different from that of
other mental disorder listings."  20 C.F.R. Pt. 404, Subpt. P,
App'x 1, Part A, § 12.00A.  It is not an independent indicator
of disability.  Instead, "it will only serve to indicate which
of the other listed mental or physical impairments must be used
to evaluate the behavioral or physical changes resulting from
regular use of addictive substances."  Id.

be considered disabled, as that term is defined in the Act.  The
ALJ concluded that he would not.  Beyond the substantial record
evidence supportive of the ALJ's conclusions, claimant's own
statements to his various treating professionals support the
conclusion that his drug and alcohol addictions materially
contributed to his disability – particularly his mental
impairments.  For example, in hospital notes dated August 19,
2014, it is reported that claimant "relayed that his main
problem is his inability to stop drinking and using drugs.
[Claimant] states that when he is not drinking, although this
happens rarely with very short periods of time, his mood is
fine, but drinking and doing drugs made him feel more
depressed."  Admin. Rec. at 660 (emphasis supplied).  Similarly,
in October of 2014, claimant reported to Dr. Elena Galkina that
he "needs to stop using drugs and alcohol because it is
dangerous and makes him feel depressed, hopeless, suicidal."
Id. at 999.

    In light of the foregoing, the court cannot conclude that
the ALJ erred in finding that, absent drug and alcohol abuse,
claimant's mental impairments would not meet or equal a listed
impairment.

III. <u>Medical Opinions and Claimant's RFC</u>.

Finally, claimant asserts that the ALJ erred in concluding that if claimant discontinued his substance abuse, he would have the residual functional capacity to perform a range of light work.  Specifically, claimant says the ALJ failed to properly weigh the medical opinion evidence and placed too much weight on the testimony of the independent medical consultant, Dr. Golub.

In reaching the conclusion that if claimant stopped abusing alcohol and illegal substances, he would retain the RFC to perform a range of light work, the ALJ more than adequately explained his reasons for affording substantial weight to the opinions of Dr. Golub as to claimant's mental impairments. Admin. Rec. at 119.  Claimant's arguments to the contrary, <u>see</u> Claimant's Memorandum at 16-20, are unavailing.  The ALJ also adequately explained his decision to afford only limited weight to the opinion of state examiner Michael Schneider (who, it should probably be noted, opined that claimant's mental impairments were <u>non</u>-severe), as well as the determination made by the State of New Hampshire Aid to the Permanently and Totally Disabled, and why he chose, instead, to defer to the opinions of Dr. Golub.  Admin. Rec. at 120.

The ALJ also supportably explained his decision to afford
no weight to the opinions contained in the letter authored by
Dr. Christopher Benton.  Id. at 119-20.  See also id. at 581.
As the ALJ properly noted, although Dr. Benton acknowledged
claimant's alcohol dependence and opined that claimant
"struggles with severe depression, . . . PTSD and anxiety
issues," he did not discuss the impact claimant's drug and
alcohol abuse have on those impairments.  See id. at 581 (letter
from Dr. Benton).  And, Dr. Benton's opinion that claimant is
"unable to engage in gainful employment at this time" is an
issue reserved to the Commissioner.  See 20 C.F.R. §
404.1527(d)(1).  See also SSR 96-5p, Titles II and XVI: Medical
Source Opinions on Issues Reserved to the Commissioner, 1996 WL
374183 (S.S.A. July 2, 1996).  Similarly, as noted above, the
ALJ adequately supported his determination that, even if the
opinions of Dr. Whitesell had been made part of the record, he
would have afforded them no weight.  Admin. Rec. at 120.

As for claimant's physical limitations, the ALJ adequately
explained his reasons for affording substantial weight to the
opinions of state examiner Burton Nault, M.D., and consultative
examining physician Robert Yager, M.D., Admin. Rec. at 120-21,
both of whom opined that claimant retained the physical and
mental capacity to perform activities consistent with a range of

light work.  See id. at 193-95 (report of Dr. Nault); 545-49
(report of Dr. Yager).  The ALJ also provided adequate support
for his decision to discount some of the opinions of Dr.
Salvatore Vella, one of claimant's treating physicians,
including the fact that Dr. Vella's examination notes did not
support the very restrictive range of work he opined claimant
could perform.  Id. at 121-22.[2]

## Conclusion

Judicial review of the ALJ's decision is both limited and
deferential.  This court is not empowered to consider claimant's
application de novo, nor may it undertake an independent
assessment of whether he is disabled under the Act.
Consequently, the issue before the court is not whether it

---

[2]    Claimant also challenges the ALJ's musing on the "theories"
underlying the "treating source rule," as well as his
speculation about possible motivations that treating sources
might have to exaggerate a claimant's impairments or symptoms in
order to "assist a patient with whom he or she sympathizes."
Admin. Rec. at 117-18.  To be sure, that portion of the ALJ's
decision is neither helpful nor particularly illuminating.  But,
that portion of the written decision appears to be little more
than standard boilerplate, repeated in most, if not all, of this
ALJ's opinions.  In fact, perhaps through some typographical or
proof-reading error, that paragraph appears twice in this
particular decision.  The important point is this: it is clear
from the substantive elements of his written decision that the
ALJ adequately explained his decision to discount the opinions
of some of claimant's treating sources.  And, it is equally
plain that he relied upon permissible, rather than speculative,
reasons for doing so.  See 20 C.F.R. § 404.1527(c).

believes claimant is disabled.  Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

    Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior

to the date of the ALJ's decision (March 23, 2015).  The ALJ's decision to strike the challenged documents from the record was consistent with the provisions of 20 C.F.R. §§ 405.331(b) and (c).  And, even if that decision had been made in error, it would have been harmless.  Additionally, the ALJ's determination that, if claimant discontinued his alcohol and substance abuse, his mental impairments would not meet or equal any of the listed impairments is supported by substantial evidence in the record. Finally, the ALJ's conclusion that, if claimant discontinued his substance abuse, he would retain the RFC to perform a range of light work is also supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 12) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 13) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                                    _____
                                    **Steven J.** McAuliffe
                                    United States District Judge

October 21, 2016

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.